<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| EFRAIN ARCE,<br><br>                      Plaintiff,<br><br>                v.<br><br>BRUCE W. SAPP, ET AL.,<br><br>              Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

Civil Action No. 09-3082(SRC)

**OPINION**

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court on the motion by Defendants P. Brooks, L. Moore, Frank Pedalino, and M. Thompson, (collectively, "Defendants") to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b), and for summary judgment pursuant to Federal Rule of Civil Procedure 56(e) [docket entry 30.]  Plaintiff Efrain Arce ("Plaintiff"), who proceeds *in forma pauperis*, did not oppose the motion.  The Court has opted to rule based on the papers submitted and without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons expressed below, the Court will grant the Defendants' motion.

**I.    BACKGROUND**

      Plaintiff, a former inmate of Northern State Prison ("NSP") in the State of New Jersey, initiated this action on June 25, 2009, through filing a Complaint against Defendant Brooks, an NSP administrator, Defendant Moore, a social worker at NSP, Defendant Pedalino, an assistant administrator at NSP, Defendant Thompson, an Senior Investigator with the Special Investigative

Unit ("SID"), and other individuals .[1]  Plaintiff alleges that, during his incarceration, certain SID officials and State Corrections Officers ("SCOs"), including Defendants Thompson and Pedalino, failed to protect him, and failed to thoroughly investigate the assault on him by another inmate, in violation of Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution.  Plaintiff also alleges that certain SID officials, administrators and program officials, including Defendants Brooks, Pedalino and Moore, failed to address his grievance complaints regarding the assault, in violation of Plaintiff's rights under the Fourteenth Amendment.  Plaintiff further alleges that Defendant Pedalino and other administrators and program officials removed him from the "Fresh Start" program in retaliation for his grievance complaints, in violation of Plaintiff's First and Eighth Amendment rights.  Finally, Plaintiff asserts that the foregoing conduct also violates the Rules and Regulations established by the New Jersey Administrative Code and the Department of Corrections of the State of New Jersey. Plaintiff seeks a declaratory judgment, injunctive relief, compensatory and punitive damages.

Plaintiff was incarcerated on February 2, 2007, to serve a five-year sentence with a three-year mandatory minimum sentence for bail jumping, and for distributing a controlled substance on school grounds.  Plaintiff was transferred to NSP on May 31, 2007.  Plaintiff complains of two incidents relevant to the moving Defendants, which occurred during his incarceration at NSP.  First, on June 20, 2007, Plaintiff was assaulted by a Latin King member inmate named Charles Mora, after which Plaintiff was placed in temporary close custody ("TCC"), and inmate Mora was placed in pre-hearing detention.  A Disciplinary Report was issued against inmate

---

[1] Plaintiff's Complaint [docket entry 1] also names the following individuals as defendants: Bruce W. Sapp, Eric Stokes, T. Caldwell, John Doe Investigator, Rabb, Mendez, C. Perez, Emanuel Awa, R. Abdulla, Ms. Majorhill, Mr. J. Meyers, Mr. E. Spencer, and Ms. S. Shaw.  However, only the four Defendants named above bring the within motion to dismiss and for summary judgment.

Mora, who explained the assault to SCO Perez as follows: "While I was on the serving line (breakfast) [h]e . . . called me a name because I refused to give him more food.  I went in his cell and beat him up."  (Lagana Decl., Ex. B.)  Inmate Mora received disciplinary charges for assault on another, for being in an unauthorized area and engaging in conduct which disrupted the safe and orderly running of the institution.  On June 25, 2007, inmate Mora appeared for a hearing before the New Jersey Department of Corrections Hearing Officer, was found guilty of disruptive conduct, and was sanctioned.  A "keep separate" status was established between inmate Mora and the Plaintiff.  (Allen Decl., Ex. A.)

Plaintiff alleges that, approximately one month later, Principal SID Investigator Caldwell and Assistant Administrator Eric Stokes decided to release Plaintiff from TCC "with[out] doing a thorough [investigation]" and "not knowing [if Plaintiff's] life would be in [harm's way again,]" in violation of his rights under the Eighth and Fourteenth Amendments.  (Compl. ¶ 16.)  SCO Perez and Defendant Thompson also signed the release.  However, Defendants provide evidence of a separative administrative investigation of the assault, conducted by Defendant Thompson, a Senior Investigator with the SID Unit, which included interviews with the SCOs involved, and a review of their reports.  (Allen Decl., Ex. A).  Notably, it appears that Plaintiff prepared a written statement on the day of the assault, indicating that he did not want protective custody.  Id.  In light of the foregoing, and because a "keep separate status" had been established between the inmates, Defendant Thompson concluded that protective custody was not appropriate.

Plaintiff's Complaint then turns to a second incident which occurred on April 2, 2008, during a "Fresh Start" program meeting, attended by some 95 inmates.  Plaintiff alleges that,

during the meeting, Director Emanuel Awa[2] stated that Plaintiff had "dropped a slip," implying to the other inmates that Plaintiff was a "snitch." (Compl. ¶ 19.) On April 3, 2008, Plaintiff filed a grievance complaint against the Director for defaming the Plaintiff, for lying and for "[breach] of confidentiality." (Compl. ¶ 19.) Plaintiff filed another complaint on April 14, 2008. According to Plaintiff, on April 28, 2008, Director Awa "vindictive[ly]" referred Plaintiff to Assistant Director Abdulla, a "liaison" with the Institutional Classification Committee ("ICC"), and Defendant Pedalino. Id. Plaintiff alleges that these individuals pulled Plaintiff out of the Fresh Start program, revoking his minimum custody privileges, and returning him to medium custody status. (Compl. ¶ 20.) Defendant Pedalino gloated, during an interview with the ICC, that he had taken Plaintiff out of the Fresh Start program, and that the program did not want plaintiff back. (Compl. ¶ 21.) Plaintiff filed a third complaint on April 30, 2008, asserting that he had wrongfully been removed from the Fresh Start program in retaliation for his earlier complaints. Plaintiff alleges that Defendant Pedalino is responsible for Plaintiff's retaliatory removal from the program, and that this conduct violated his rights under the First and Eighth Amendments.

Thereafter, Plaintiff made further complaints regarding his removal, also alleging that the June, 2007 assault had never been properly investigated, and that he had been assaulted again in August of 2007. Plaintiff maintains that Defendant Brooks, the Coordinator of the inmate request and remedy management system, Defendant Pedalino and others did not respond to Plaintiff's further complaints, and denied his appeals of their decisions. Plaintiff also asserts that, on September 11, 2008, he requested assistance from the social service department, but that

---

[2] Emanuel Awa is Director of the Gateway Foundation, which runs therapeutic substance-abuse treatment and community release programs for inmates, such as the Fresh Start program.

Defendant Social Worker L. Moore was indifferent to Plaintiff's requests.  Specifically, Moore "refused to channel [Plaintiff] through the higher echelon of the Northern State Prison having knowledge enhancing [P]laintiff's situation."  (Compl. ¶ 23.)  At this point, Plaintiff claims, he had exhausted his administrative remedies.  Moreover, Plaintiff asserts that the foregoing conduct constitutes a misuse of authority, and a breach of his Fourteenth Amendment Due Process rights.  Finally, Plaintiff maintains that Defendants' conduct violated the New Jersey Administrative Code and Department of Correction regulations.

Northern State Prison had in place, at all relevant times, an Inmate Handbook, revised in October of 2003, which established an administrative grievance procedure for inmates to lodge complaints, make requests or suggestions to NSP administrators.  See N.J.A.C. 10A:8-1.1 to 3.6. The inmate remedy forms are submitted in a specially-designated box, and then collected by a Coordinator for distribution to the appropriate department supervisor for a response.  (Lagana Decl. ¶ 10, Ex. C.)  When the inmate receives a response, he may appeal the response within ten days, by completing "Part 4" of the form, and re-depositing it in the box.  Id. ¶ 11, Ex. C.  The Administrator or designee will render a decision regarding the appeal, which is considered final at the correctional facility level.  Id. ¶ 12, Ex. C.  Thus, an inmate has exhausted his administrative remedies when he receives a response to his appeal.  Defendants append copies of all remedy forms submitted by Plaintiff, which reflect responses to his complaints.  (Allen Decl., Ex. A; Lagana Decl., Ex. D.)  The remedy forms also reflect that Plaintiff did not appeal most of the answers to his complaints, though, relevant to his claims in this action, Plaintiff did appeal the denial of his complaint that he was removed from the Fresh Start program in retaliation for

"exercising his rights," and seeking reinstatement in the program, which was denied.[3]

In addition to the regular grievance procedures, there were two separate administrative investigations of Plaintiff's complaints.  First, SID Investigator Raboy conducted an investigation of Plaintiff's complaints regarding Director Awa.  Investigator Raboy's report, dated on or about April 7, 2008, reflects an interview with Defendant Pedalino and with Plaintiff, who repeated his complaints about Director Awa violating his confidentiality, but denied a need for protective custody, and stated that he wished to remain in the program.  (Allen Decl., Ex. A.)  Investigator Raboy concluded that the allegations against Dr. Awa could not be substantiated.  Id. Second, SID Investigator Beata Narath conducted an investigation with respect to Plaintiff's later complaints regarding his retaliatory dismissal from the program, his claim that his assault had not been properly investigated or addressed, his complaint of a further assault on August 20, 2007, and his complaints that his inmate remedy forms were not answered.[4]  Investigator Narath found no tangible evidence to substantiate Plaintiff's allegations, and noted that Plaintiff had not appealed most of the responses to his grievance complaints.

As to Plaintiff's discharge from Fresh Start, Plaintiff's clinical and therapeutic community reports indicate that he was terminated at the recommendation of his primary

─────────────

[3] Though the inmate remedy form, dated November 3, 2008, does not reflect a decision on Plaintiff's appeal, a later response to Plaintiff's subsequent complaints indicates that the appeal was denied.  (Lagana Decl., Ex. D.)

[4] Investigator Narath received a referral for investigation on December 25, 2008, and interviewed Plaintiff on December 16, 2008.  Investigator Narath also interviewed Defendant Brooks, reviewed Plaintiff's classification file, and reviewed his inmate remedy forms.  Her report recounts Defendant Thompson's investigation into the June 20, 2007 assault, inmate Mora's disciplinary charge, and the resulting keep separate status.  With respect to the alleged assault on August 17, 2007, Investigator Narath reviewed the NSP records, and found no noted incident involving Plaintiff on that date.  Finally, Investigator Narath concluded that Plaintiff's grievance complaints had been timely and properly answered.

counselor and clinical supervisor, due to lack of growth and a negative attitude.  (Allen Decl., Ex. A.)  N.J.A.C. 10A:9-4.6(c) provides that "as a condition of eligibility for consideration of any custody status lower than medium custody, inmates who are assigned to a therapeutic community (T.C.) or treatment program must accept, participate and successfully complete the assignment." If an inmate fails to accept, participate in and successfully complete his assignment, the ICC approves an override code to reassign that inmate to medium custody status or above, although he is otherwise eligible for minimum custody status.  N.J.A.C. 10A:9-2.14(a)(11).  According to Defendants, following Plaintiff's discharge from Fresh Start due to his lack of growth and negative attitude, on September 9, 2008, the ICC approved Plaintiff's assignment to medium custody.  (Lagana Decl., Ex. A.)

On August 12, 2011, Defendants moved to dismiss Plaintiff's Complaint, and for summary judgment.  First, Defendant Moore argues that the Complaint it is devoid of factual allegations with respect to him, and therefore must be dismissed as to him.  Second, Defendants argue that Plaintiff's suit against them in their official capacities is barred by the Eleventh Amendment.  Defendants further argue that they are entitled to summary judgment, because the Complaint is barred in its entirety in light of Plaintiff's failure to exhaust his administrative remedies.  Moreover, Defendant Thompson asserts that he is entitled to summary judgment on Plaintiff's equal protection claim because he has not demonstrated discriminatory treatment. Defendant Pedalino seeks summary judgment on Plaintiff's retaliation claim, arguing that Plaintiff was not subjected to adverse action as a result of engaging in any constitutionally-protected activity.  Defendants also submit that, in the event the Court decides that Plaintiff's claims survive the above summary judgment arguments, they are entitled to qualified immunity on Plaintiff's claims.  Finally, Defendants argue that Plaintiff's claim for punitive damages must

be dismissed because he cannot make the requisite showing to warrant such relief.

For the reasons expressed below, the Court finds that sovereign immunity does not bar Plaintiff's claims against the Defendants in their individual capacities.  However, to the extent that Plaintiff alleges violations of New Jersey administrative rules and regulations as independent causes of action, same are dismissed for failure to state a claim upon which relief may be granted.  Moreover, the Court will grant summary judgment in favor of Defendants Moore, Brooks and Thompson, because Plaintiff failed to exhaust his administrative remedies with respect to his claims against them.  For the same reason, the Court will grant summary judgment in favor of Defendant Pedalino with respect to Plaintiff's Eighth and Fourteenth Amendment claims.  Finally, the Court will also grant summary judgment in favor of Defendant Pedalino with respect to Plaintiff's First Amendment retaliation claim, because, although Plaintiff exhausted his administrative remedies, there is no genuine dispute that Defendant Pedalino had no involvement in Plaintiff's dismissal from the Fresh Start program, and thus Defendant Pedalino is entitled to judgment as a matter of law.  The Court will not address the Defendants' remaining arguments, because the foregoing judgments resolve the instant motion.

## II.  DISCUSSION

### A.    Motion to Dismiss:

#### 1. Legal Standard

The Court must review this motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a claim for failure to state a claim upon which relief may be granted.  Federal Rule of Civil Procedure 8(a) requires that to state a claim for relief, a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  When evaluating the sufficiency of claims subject to the pleading

requirements of Rule 8(a), the Court must apply the plausibility standard articulated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). In Twombly and Iqbal, the Supreme Court stressed that a complaint will survive a motion under Rule 12(b)(6) only if it states "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556.) The cases are also clear about what will not suffice: "threadbare recitals of the elements of a cause of action," an "unadorned, the-defendant-unlawfully-harmed-me accusation" and conclusory statements "devoid of factual enhancement." Id. at 1949-50; Twombly, 550 U.S. at 555-57. While the complaint need not demonstrate that a defendant is *probably* liable for the wrongdoing, allegations that give rise to the mere *possibility* of unlawful conduct will not do. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 557. In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the allegations of the complaint, documents attached or specifically referenced in the complaint if the claims are based upon those documents and matters of public record. Winer Family Trust v. Queen, 503 F.3d 319, 327 (3d Cir. 2007); Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). See also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (holding that dismissal of a count in a complaint with prejudice is appropriate if

amendment would be inequitable or futile).

### 2. Defendants' Immunity from Suit under the Eleventh Amendment

Plaintiff brings this civil rights action under 42 U.S.C. § 1983, alleging violations of his rights by Defendants Brooks, Moore, Thompson and Pedalino in their official and individual capacities.  (Compl., "Parties," ¶¶ 5,8,12 & 13.)  Defendants argue that the Eleventh Amendment grants them sovereign immunity from suit.  A suit by a private party against either a state or its agencies is barred by the Eleventh Amendment to the United States Constitution, which provides that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

See also Alabama v. Pugh, 438 U.S. 781, 782 (1978) (citing Worcester County Trust Co. v. Riley, 302 U.S. 292 (1937); Meyer v. New Jersey, 460 F.2d 1252, 1253 (3d Cir. 1972).  Only two exceptions to Eleventh Amendment immunity have been recognized by the Supreme Court: waiver of immunity by the state, and abrogation of immunity by Congress.  Alden v. Maine, 527 U.S. 706, 755-56 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Ex parte New York, 256 U.S. 490, 497 (1921); Welch v. Texas Dep't of Highways & Public Transp., 483 U.S. 468, 487 (1987).  A state's immunity from suit under the Eleventh Amendment extends to an agency or department of the state, and to a state official if he or she is sued in his or her official capacity, wherever the state is the "real party in interest;" that is, whenever "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 102, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984) ("Pennhurst II") (citing Dugan v. Rank, 372 U.S. 609, 610 (1963));

see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (noting that "official capacity suits 'generally represent only another way of pleading an action against an entity of which the officer is an agent.'") (internal citation omitted).

Although Congress may abrogate Eleventh Amendment immunity by statute in limited circumstances, the United States Supreme Court has held that 42 U.S.C. § 1983 does not override a State's immunity.  Quern v. Jordan, 440 U.S. 332, 350 (1979).  42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The defendant in a § 1983 action, to be liable within the meaning of the statute, must be a "person."  A State is not a "person" within the meaning of § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989) (holding that "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties.").  Accordingly, a state official acting in his or official capacity is not a person within the meaning of § 1983.  Id. at 71 (holding that a suit against a state official in his or her official capacity is not a suit against the official, but a suit against the official's office, and is thus "no different than a suit against the State itself.").

However, the Eleventh Amendment does not bar "suits against individual state officers for prospective relief to end ongoing violations of federal law."  Law Offices of Christopher S. Lucas & Assocs. v. Disciplinary Bd., 128 Fed. Appx. 235 (3d Cir. 2005) (citing Ex parte Young,

209 U.S. 123, 52 L.Ed. 714, 28 S. Ct. 441 (1908)).  Thus, § 1983 has been interpreted to provide

a cause of action against state officials for injunctive relief, since, in that circumstance, "official

capacity" actions are not treated as actions against the state.  Indeed, the theory behind the so-

called "Young" exception is that a state official acting in violation of federal law may be

enjoined because the state could not have authorized his or her actions.  Pennhurst II, 465 U.S. at

101 (citing Young, 209 U.S. at 160, holding that, since state could not have authorized the

officer's actions, the officer was "stripped of his official or representative character, and [was]

subjected in his person to the consequences of his individual conduct.").  However, the Young

exception does not apply if, "although the action is nominally against individual officers, the

state is the real, substantial party in interest and the suit is in fact against the state."  MCI

Telecomm. Corp. v. Bell Atlantic-Pennsylvania, 271 F.3d 491, 506 (3d Cir. 2005) (citing

Pennhurst II, 465 U.S. at 101) (holding that the Young exception does not apply where a private

party sues a state official for retrospective relief).

Plaintiff sues Defendants, officials employed by New Jersey Department of Corrections,

under § 1983, for alleged violations of his rights under the First, Eighth, and Fourteenth

Amendments.  Plaintiff seeks a declaratory judgment, an injunction requiring the Defendants to

conduct a proper investigation of his complaints, and general compensatory and punitive

damages against the Defendants.  Because Defendants are New Jersey State officials, Plaintiff's

claims against the Defendants in their official capacities are barred by the Eleventh Amendment.

Pennhurst II, 465 U.S. at 102.  Moreover, § 1983 provides no cause of action against State

officials acting in their official capacities.  Will, 491 U.S. at 71.  However, to the extent that

Plaintiff seeks relief against the Defendants in their individual capacities, he states a cause of

action under § 1983 which is not barred by the Eleventh Amendment.

### 3. Administrative Violations

Plaintiff alleges that the Defendants' failure to properly investigate Plaintiff's assault, their failure to protect him, failure to address his grievance complaints, and retaliation against him constitute not only violations of the United States Constitution, but also violations of various provisions of the New Jersey Administrative Code and the Department of Corrections Rules and Regulations. However, Plaintiff fails to assert, and the Court is not aware of any private right of action provided by those rules. Moreover, 42 U.S.C. § 1983 is not a vehicle for the enforcement of State administrative rules. See, e.g., Davis v. Wilson, 2009 U.S. Dist. LEXIS 21843, at **24-25 (W.D. Pa. Mar. 12, 2009). The Court must dismiss, at the earliest possible time, *in forma pauperis* actions that fail to state a claim for relief. See 28 U.S.C. § 1915(e)(2)(B). Thus, to the extent that Plaintiff seeks relief for Defendants' alleged violations of New Jersey administrative rules, same are dismissed, with prejudice, for failure to state a claim upon which relief may be granted.[5]

### B.    Summary Judgment:

### 1. Legal Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[5]The Court emphasizes that Plaintiff filed no opposition to Defendants' motion to dismiss and for summary judgment. Moreover, it would be futile to dismiss Plaintiff's administrative claims without prejudice, since § 1983 provides no cause of action for the direct enforcement of State administrative rules.

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co.,

223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must

construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v.

Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden

of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986).

      Once the moving party has properly supported its showing of no triable issue of fact and

of an entitlement to judgment as a matter of law, the non-moving party "must do more than

simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at

247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go

beyond the pleadings and by her own affidavits, or by the "depositions, answers to

interrogatories, and admissions on file," designate "specific facts showing that there is a genuine

issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v.

BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)

("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for

item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla'

threshold").

      2. Exhaustion of Administrative Remedies

      Plaintiff avers that he submitted grievance complaints through the Inmate Remedy

System at NSP, but that same were "not answered," and that, generically, his appeals were

"denied."  Plaintiff also alleges that he was terminated from the Fresh Start program in retaliation for his grievance complaints.  Plaintiff argues that the failure to address his grievance complaints violates his Fourteenth Amendment rights, and that the retaliation against him for complaining constitutes a violation of his First and Eighth Amendment rights.  Plaintiff also alleges, generally, that he exhausted his administrative remedies with respect to all the claims raised in his Complaint.  Defendants argue that they are entitled to summary judgment on Plaintiff's claims, because Plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e.

Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The requirement that a prisoner exhaust his or her administrative remedies before filing a Section 1983 action in federal court is mandatory.  Booth v. Churner, 532 U.S. 731, 739 (2001).   Indeed, the Supreme Court stressed in Booth that 42 U.S.C. § 1997e(a) does not contain a futility exception, and that it "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  Id. at 741 n.6.  The exhaustion requirement applies to prisoners who were in custody at the time of filing their original complaint.  Porter v. Nussle, 534 U.S. 516, 524 (2002); Jones v. Bock, 549 U.S. 199, 211 (2007).  An inmate must "properly exhaust" the available administrative remedies, which means properly "using all steps that the agency holds out" and "demands compliance with an agency's deadlines and other critical procedural rules . . ."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (internal citations omitted).  Inmates in prisons operated by the New Jersey Department of Corrections must address their grievances through the procedures described in the Inmate

Handbook before they may pursue their 42 U.S.C. § 1983 claims in federal court.  Conception v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002) (holding that an administrative remedy need not be formally adopted through agency regulations in order to be considered a remedy within the scope of Section 1997e's exhaustion requirement).

As an initial matter, to the extent that Plaintiff argues that the grievance process itself was deficient, this argument is unavailing, because inmates do not have a constitutional right to a prisoner grievance process.  See Heleva v. Kramer, 214 F.2d F'Appx 244, 247 (3d Cir. 2007) (per curium) (nonprecedential) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)). Furthermore, Defendants append to their motion copies of Plaintiff's grievance complaints, all of which reflect answers from NSP administrative staff, as well as the reports of two SID Investigators who made independent inquiries regarding Plaintiff's complaints.  Plaintiff has not contested this evidence.  Thus, Plaintiff fails to support his contention that his administrative complaints were ignored.

As to whether Plaintiff exhausted NSP's grievance procedure, it is undisputed that Plaintiff was an inmate of NSP on June 25, 2009, when he filed his Complaint.  As set forth above, the Inmate Remedy System requires inmates to submit forms to the Coordinator for distribution to the appropriate supervisor; the forms are then returned to the inmate with a written response.  The inmate may appeal the decision of the supervisor through filling out Part 4 of the form, and resubmitting it to the Coordinator.  Once the inmate has received an answer to his or her appeal, the inmate has exhausted his or her administrative remedies with respect to the claim raised through that procedure.  Plaintiff filed numerous complaints, but filled out the "appeal" section of only two of them, one initially dated November 3, 2008, and another initially dated January 5, 2009.  Of the two appeals, only the first relates to a claim raised in Plaintiff's

Complaint: Plaintiff requested an interview with the ICC, and reinstatement in the Fresh Start program, arguing that (in filing complaints about the director of the program, Mr. Awa) he had only been exercising his "right" to protect himself. [6]  (Allen Decl., Ex. A.)  On November 7, 2008, Plaintiff received a response, together with a five-page attachment, indicating that he was terminated from the program because he was considered a "failure" under "custody classification standards."  Id.  On the same date, Plaintiff filled out the appeals section of the form.  Though there is no paperwork indicating an answer to this appeal, a later complaint form, originally dated January 5, 2009, states, in the response section, that Plaintiff had appealed his discharge from the Fresh Start Program, and had "received an answer" denying the appeal.  Thus, Plaintiff has exhausted his administrative remedies with respect to the allegation of retaliatory treatment by Defendant Pedalino in connection with Plaintiff's removal from the Fresh Start program. However, Defendants have presented evidence which establishes that, as to Plaintiff's Eighth and Fourteenth Amendment claims against Defendant Pedalino, he did not exhaust the administrative remedies available to him at NSP, as required by the PLRA to state a viable claim.  Ray v. Kertes, 285 F.3d 287, 291 (3d Cir. 2002) (holding that failure to exhaust administrative remedies is an affirmative defense on which defendant bears burden of proof).  That evidence has not been refuted by the non-movant, as required by Rule 56(e) to defeat summary judgment.  Plaintiff's failure to exhaust administrative remedies available at NSP also bars him from obtaining legal relief on his § 1983 claims regarding the other Defendants' alleged failure to protect him from assault, properly investigate his assault, or provide him with social services.  42 U.S.C. §

---

[6]The second appeal does not relate to Plaintiff's claims in this action: Plaintiff requested an interview with his attorney after meeting with Ms. Narath on December 16, 2008.  On January 19, 2009, after receiving a response (apparently denying the request - the text is illegible), Plaintiff filled out the appeal section of the form.  No response is indicated.

1997e(a); <u>Boyd v. United States</u>, No. 10-2484, 2010 WL 3899583, at *2-3 (3d Cir. Oct. 6, 2010)

(<u>per curiam</u>).  Therefore, the only claim which survives the administrative exhaustion

requirement is Plaintiff's claim that Defendant Pedalino was responsible for Plaintiff's retaliatory

removal from the Fresh Start program, in violation of Plaintiff's First Amendment rights.[7]

 3. <u>Plaintiff's Retaliation Claim</u>

 Plaintiff alleges that he was discharged from the Fresh Start program, and reassigned to

medium custody status, at the behest of Defendant Pedalino and others, in retaliation for his

grievance complaints against Director Awa.  Plaintiff alleges that this retaliatory discharge

violates his rights under the First Amendment.  Defendant Pedalino moves for summary

judgment on Plaintiff's retaliation claim, because Plaintiff's discharge from Fresh Start and his

return to medium custody was premised on a legitimate penological interest, and because

Defendant Pedalino had no involvement in the discharge decision.  For the reasons set forth

below, the Court finds that Plaintiff has failed to support his claim that Defendant Pedalino

retaliated against him for his complaints about Director Awa.

 "Retaliation for constitutionally-protected activity is itself a violation of rights secured by

the Constitution actionable under section 1983."  <u>White v. Napoleon</u>, 897 F.2d 103, 112-13 (3d

Cir. 1990); <u>Wright v. Newsome</u>, 795 F.2d 964, 968 (11th Cir. 1986) (<u>per curium</u>) (holding that

otherwise constitutional actions, when taken in retaliation for filing a lawsuit, violate an inmate's

_____

 [7]To the extent that Plaintiff argues that his dismissal from the Fresh Start program also
constitutes a violation of his rights under the Eighth Amendment, he did not allege in the
November 3, 2008 grievance complaint, nor in his later appeal, that the discharge constituted
cruel treatment or deliberate indifference to a risk of harm, and thus he failed to exhaust any such
claim, as noted above.  Even if the Court construed Plaintiff's grievance complaint to allege a
violation of the Eighth Amendment, such a claim against Defendant Pedalino would be moot
because, as set forth below, the Court concludes that Defendant Pedalino was not involved in
Plaintiff's discharge from Fresh Start program or his return to medium custody status.

First Amendment rights and right to access the courts).  A prisoner litigating a retaliation claim therefore need not prove that he had an independent liberty interest in the privilege that he was denied.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Rather, to establish a claim for retaliation under § 1983, a plaintiff must prove that: (1) he engaged in constitutionally protected conduct; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the alleged adverse action.  See McGrath v. Johnson, 67 F. Supp. 2d 499, 512 (E.D. Pa. 1999) (citing Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997)).  Once a prisoner demonstrates that his exercise of a constitutional right was a substantial motivating factor in the decision to take the alleged adverse action, the burden shifts to prison officials to prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.  Rauser, 241 F.3d at 334.

Plaintiff filed a grievance complaint against Director Awa, which is constitutionally-protected conduct.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  However, Defendant Pedalino argues that, in this case, summary judgment is appropriate because, even if Plaintiff could show that his exercise of a constitutional right was a substantial motivating factor in the decision to terminate him from the Fresh Start program, Defendant has shown that the Plaintiff would still have been terminated because he received a behavioral maladjustment discharge, and was appropriately reassigned to medium custody status.  Moreover, Defendant Pedalino had no involvement in these decisions.  Plaintiff has not disputed Defendant's evidence that his discharge from Fresh Start was initiated by Plaintiff's primary counselor and clinical supervisor, due to his "lack of growth and negative attitude," and later approved by Director Awa.  (Allen Decl., Ex. A.)  Neither has Plaintiff disputed Defendant's assertion that, upon Plaintiff's

discharge from the Fresh Start program, the ICC approved an override code assigning Plaintiff to medium custody status, pursuant to N.J.A.C. 10A:9-4.6(c) and N.J.A.C. 10A:9-2.14(a)(11). (Lagana Decl., Ex. A.)  Even taking as true Plaintiff's assertion that Defendant Pedalino gloated that he had "removed" Plaintiff from the Fresh Start program, there is no evidence to suggest that Defendant Pedalino had any actual authority or discretion to discharge Plaintiff from Fresh Start, or reassign him to medium custody.  Civil rights claims cannot be premised on a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named Defendant must be shown, with particularity, to have been personally involved in the events underlying the claim.  See Rizzo v. Goode, 423 U.S. 362, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976).  Plaintiff has not disputed Defendant Pedalino's evidence that he had no personal involvement in the decision to discharge Plaintiff from Fresh Start and reassign him to medium custody status, and that, in fact, those decisions were in the hands of Fresh Start program officials and the ICC.  The Court must conclude that Defendant Pedalino could not have taken the retaliatory action alleged by Plaintiff, and therefore Defendant Pedalino is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

## III.    CONCLUSION

For the foregoing reasons, Defendants Brooks, Moore, Thompson and Pedalino are entitled to summary judgment on Plaintiff's First, Eighth, and Fourteenth Amendment claims. Plaintiff's claims that Defendants violated various New Jersey administrative rules and regulations are dismissed with prejudice.  An appropriate form of Order will be filed herewith.

 s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  November 28, 2011